UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GERALDINE CRAIG

VERSUS

NANCY A. BERRYHILL
ACTING COMMISSIONER OF SOCIAL SECURITY

CIVIL ACTION

NO. 17-1715-EWD
(CONSENT)

## RULING

Plaintiff, Geraldine Craig ("Plaintiff"), brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for supplemental security income ("SSI").[1] Plaintiff has filed a Brief in support of her appeal,[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the court **VACATES**[5] the Commissioner's decision and **REMANDS** Plaintiff's case for further administrative proceedings consistent with this opinion.

---

[1] AR pp. 94-99 (application for SSI), AR pp. 548-560 (Notice of Decision – Unfavorable issued by ALJ). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR p. [page number(s)])."

[2] R. Doc. 15.

[3] R. Doc. 17.

[4] R. Doc. 18.

[5] The parties consented to proceed before the undersigned United States Magistrate Judge, R. Doc. 9, and on January 2, 2018, an Order of Reference was entered by the District Judge referring this matter to conduct "all further proceedings and the entry of *Judgment* in accordance with 28 USC 636(c)…." R. Doc. 10.

## I. Procedural History

Plaintiff filed an application for SSI on December 26, 2012 alleging disability beginning July 10, 2011[6] due to physical conditions.[7] Plaintiff's claim was initially denied on April 25, 2013.[8] Plaintiff requested a hearing before an administrative law judge ("ALJ"),[9] and a hearing was held on March 20, 2014 during which, Plaintiff, represented by counsel, testified.[10] On April 11, 2014, the ALJ issued a notice of unfavorable decision.[11] Per that decision, the ALJ found that Plaintiff had the severe impairment of bilateral carpal tunnel syndrome[12] but that Plaintiff was able to perform a full range of light work (*i.e.*, without any manipulative limitations).[13] Plaintiff requested review by the Appeals Council,[14] and on June 29, 2015, the Appeals Council denied Plaintiff's request for review.[15]

On September 2, 2015, Plaintiff filed a Complaint seeking review of the denial of her claim for SSI benefits,[16] and on April 22, 2016, the Commissioner filed an Unopposed Motion to Remand.[17] Per the Motion to Remand, the Commissioner explained that "the administrative decision denying benefits did not fully address evidence showing limitations attributable to

---

[6] AR pp. 94-99 (application for SSI).

[7] *See*, AR p. 42 (April 25, 2013 Disability Determination Explanation listing disabling medical conditions of arthritis and Hepatitis C); AR p. 313 (November 20, 2015 Disability Determination Explanation listing conditions of carpal tunnel, knee problem, kidney disease, liver disease).

[8] AR pp. 155-160.

[9] AR pp. 56-57.

[10] AR pp. 23-40.

[11] AR pp. 9-19.

[12] AR pp. 14-15.

[13] AR p. 18.

[14] AR p. 7-8.

[15] AR pp. 1-6.

[16] AR pp. 276-277.

[17] AR pp. 292-296.

[Plaintiff's] recognized impairment of bilateral carpal tunnel syndrome."[18] On April 22, 2016, a Consent Judgment was signed by the district judge reversing the ALJ's April 11, 2014 decision and remanding the matter to the Commissioner for the purpose of conducting a rehearing and issuing a new administrative decision.[19] Per the Consent Judgment, rehearing was to include: reevaluation of the opinion evidence in the administrative record, reassessment of Plaintiff's "maximum functional capacity, especially as it relates to the limiting effects of bilateral carpal tunnel syndrome," and, if warranted, the gathering of supplemental evidence from a vocational expert ("VE") "to clarify the effect of the assessed limitations on the plaintiff's ability to perform other work in the national economy."[20]

On August 20, 2016, and following remand to the Commissioner by this Court, the Appeals Council vacated the April 11, 2014 decision.[21] In its order, the Appeals Council found that the April 11, 2014 decision did not contain an adequate evaluation of opinion evidence in the record (specifically, the opinions of a consultative examiner, Dr. Michael Day, and a state agency medical consultant, Dr. Johnny Craig), failed to consider "the claimant's insurance/financial situation as a factor as to why she had limited treatment," and did not consider Plaintiff's allegations of illiteracy.[22] Upon remand, the Appeals Council instructed that the ALJ would:

> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations, especially as it relates to the limiting effects of the

---

[18] AR p. 294.

[19] AR pp. 297-298.

[20] AR pp. 297-298.

[21] AR pp. 299-304.

[22] AR pp. 302-303. The Appeals Council also noted that on August 24, 2015, Plaintiff submitted a second application for SSI benefits with an alleged onset date of April 12, 2014 (one day after the ALJ's April 11, 2014 decision). *See*, AR pp. 446-451 & p. 303. The Appeals Council explained that its remand order rendered "the subsequent claim duplicate. Therefore the Administrative Law Judge will consolidate the claim files, create a single electronic record, and issue a new decision on the consolidated claims." AR pp. 303-304.

3

claimant's bilateral carpal tunnel syndrome…. In doing so, give further consideration to the treating and nontreating source opinions…and nonexamining source opinions…and explain the weight given to such opinion evidence.[23]

A second hearing before a different ALJ was scheduled on January 26, 2017; however, Plaintiff did not appear at that hearing, and her counsel later submitted a letter explaining that her arranged transportation to the hearing fell through at the last minute.[24] Another hearing was scheduled for June 29, 2017, and Plaintiff did not show up again.[25] On September 26, 2017, the ALJ issued another decision denying Plaintiff's claim for SSI benefits.[26] This time, the ALJ found that although Plaintiff had medically determinable impairments of bilateral carpal tunnel syndrome and Hepatitis C, neither impairment was severe.[27] Plaintiff did not file written exceptions seeking review of the September 26, 2017 decision by the Appeals Council, and therefore on November 27, 2017, the ALJ's September 26, 2017 decision became final. On November 30, 2017, Plaintiff filed her Complaint in this Court.[28] Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review and the ALJ's September 26, 2017 decision is the Commissioner's final decision for purposes of judicial review.[29]

---

[23] AR p. 303.

[24] AR p. 409.

[25] AR p. 551.

[26] AR pp. 548-560.

[27] AR pp. 553-559.

[28] R. Doc. 1.

[29] *See*, AR p. 549 ("If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final, you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action during the 60-day period starting with the day my decision becomes final."); 20 C.F.R. § 416.1484(a) ('when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case. The Appeals Council may assume jurisdiction based on written exceptions to the decision of the administrative law judge which you file with the Appeals Council or based on its authority pursuant to paragraph (c) of this section."); 20 C.F.R. § 416.1484(c) (Appeals Council may assume jurisdiction even if exceptions not filed "[a]nytime within 60 days after the date of the decision of the administrative law judge….").

## II. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[30] If the Commissioner fails to apply the correct legal standards, or to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[31]

## III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[32] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[33] In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[34]

The burden rests upon the claimant throughout the first four steps of this five-step process

---

[30] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[31] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

[32] 20 C.F.R. §§ 404.1505; 416.905.

[33] 20 C.F.R. §§ 404.1520; 416.920.

[34] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

to prove disability.[35] If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[36] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[37]

Here, the ALJ determined that Plaintiff had the medically determinable impairments of bilateral carpal tunnel syndrome and Hepatitis C.[38] However, because the ALJ found that neither impairment was "severe," the ALJ found Plaintiff was not disabled at step two of the sequential analysis and did not proceed through the remaining steps.[39] In determining that Plaintiff's carpal tunnel syndrome was not severe, the ALJ explained that:

> As described in detail above, the claimant was treated for signs and symptoms of carpal tunnel syndrome in January and June 2012, and she was again noted to have symptoms and clinical signs of bilateral carpal tunnel syndrome when seen for the consultative physical examination in March 2013. Conservative treatment in January and June 2012 included nighttime splints and steroid injections that apparently kept the symptoms well controlled between January and June 2012. The claimant was not interested in surgical treatment. There is no medical evidence to show significant signs or symptoms between January and June 2012, between June 2012 and the consultative examination in March 2013, or subsequent to March 2013. In sum, the medical evidence does not support a finding of more than mild or minimal functional limitation(s) related to carpal tunnel syndrome for a continuous period of at least 12 months or any current expectation of more than mild or minimal functional limitations for a period of at least 12 months. Accordingly, carpal tunnel syndrome is not shown to be a severe impairment.[40]

---

[35] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[36] 20 C.F.R § 404.1520(g)(1).

[37] *Muse*, 925 F.2d at 789.

[38] AR p. 553-554.

[39] AR p. 554.

[40] AR p. 558.

6

IV. **Plaintiff's Allegations of Error**

Plaintiff argues on appeal that the ALJ's step two determination was "legally erroneous and not supported by substantial evidence" because the ALJ rejected medical opinions finding Plaintiff's carpal tunnel syndrome to be severe and because the ALJ failed to comply with the District Court and Appeals Council's order upon remand.[41]

V. **Law and Analysis**

    A. **The ALJ Failed to Apply the Correct Legal Standards when Determining the Duration of Plaintiff's Impairment**

        i. **The Duration Requirement is Separate from the Question of Severity**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[42] "The statute quite clearly requires that it is the impairment only which must last for a continuous period."[43] This Court has explained that "[t]he severity of an impairment and its duration are separate issues. The regulations make it clear that at step two a claimant's alleged impairment must be a severe impairment and must also meet the duration

---

[41] R. Doc. 15, p. 1. Although the court does not reach any conclusion regarding the issue of compliance with the Consent Judgment and Appeals Council Order, it appears that both the Consent Judgment and Appeals Council Order contemplated further consideration of Plaintiff's residual functional capacity "especially as it related to the limiting effects of the claimant's bilateral carpal tunnel syndrome." AR p. 303. It is therefore particularly troubling that the ALJ's current ruling did not proceed past step two of the sequential analysis and did not reach the RFC analysis at all.

[42] 42 USC § 423(d)(1)(A).

[43] *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (explaining that "[t]he statute, however, does not require that a claimant be unable to engage in work during the entire 12 month period. The ability of a claimant to engage in work for limited periods of time certainly calls into question the severity of the impairment, but it does not necessarily determine whether the impairment, however severe, has lasted for at least 12 months.") (internal citations omitted).

7

requirement. The duration requirement for an impairment is not part of the inquiry or analysis for determining the severity of an impairment or combination of impairments."[44]

In finding that Plaintiff's carpal tunnel syndrome was not a severe impairment, the ALJ stated that there was "no medical evidence to show significant signs or symptoms between January and June 2012, between June 2012 and the consultative examination in March 2013, or subsequent to March 2013. In sum, the medical evidence does not support a finding of more than a mild or minimal functional limitation(s) related to carpal tunnel syndrome for a continuous period of at least 12 months…."[45] The ALJ gave "little weight" to functional assessments set out in a consultative examination ("CE") completed by Dr. Day (and in turn by the non-examining state agency medical expert) because "the limitations set forth by Dr. Day as consultative examiner were largely based on carpal tunnel syndrome which is not shown to be a persistently severe impairment for a period of at least 12 consecutive months (or any expectation of such duration) from the date of her SSI application…."[46] Finally, the ALJ asserted that "[t]he conclusion that the claimant does not have an impairment or combination of impairments that significantly limited his or her ability to perform basic work activities is consistent with the objective medical evidence

---

[44] *Self v. Colvin*, Civil Action No. 13-716, 2015 WL 4656696, at * 5 (M.D. La. Aug. 4, 2015) (citing 20 C.F.R. §§ 404.1505 and 416.905; 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii); *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (inquiries are intertwined but separate; duration requirement only applies to the impairment and severity requirement involves determining the effect of the impairment on the claimant's ability to work)). Like establishing the existence of a severe medically determinable impairment, "[t]he twelve month duration requirement is a threshold requirement for a claimant to prove a disability under the Social Security Act." *Pate v. Heckler*, 777 F.2d 1023, 1026 (5th Cir. 1985). *See also*, *Murray v. Astrue*, 419 Fed. Appx. 539, 541 (5th Cir. 2011) ("Murray's impairments had not lasted or would not be expected to persist for a continuous period of at least 12 months, as required to receive SSI.").

[45] AR p. 558.

[46] The ALJ also noted that "Dr. Day's assessment was otherwise based on subjective joint complaints which are not shown to correspond to any medically determinable impairment(s)." AR p. 559. With respect to Dr. Craig, the ALJ explained that "the nonexamining state agency consultant's assessment was largely based on the assessment of Dr. Day and has been afforded little weight for the same reasons." AR p. 559. Although Dr. Day may have based his medical opinion regarding Plaintiff's functional capacities on, at least in part, Plaintiff's subjective complaints, Dr. Day also reported objective observations including Plaintiff's decreased grip strength, decreased range of motion in her wrist, decreased muscle strength, and positive Tinel's and Phalens sign.

8

and other evidence and, more specifically, the lack of objective medical evidence or other evidence to support a finding of more than mild or minimal functional limitations for continuous period of at least 12 months (or any expectation of such) in relation to any impairment."[47]

It appears that the ALJ improperly conflated the question of the duration of an impairment with the question of the severity of an impairment. The ALJ's language suggests that the ALJ was requiring that the impairment be severe for at least twelve months. This is the incorrect legal standard. Instead, the impairment must both last for twelve months and be severe. "[A] claimant need only show that an alleged impairment has lasted or can be expected to last for the 12 month period to meet the duration requirement."[48] The imposition of a durational requirement on the severity of the impairment resulted in application of the incorrect legal standard, which error was not harmless. The ALJ determined that Plaintiff had a medically determinable impairment of bilateral carpal tunnel syndrome. The medical records indicate that Plaintiff was exhibiting signs and symptoms of carpal tunnel syndrome from January 2012 through at least March 2013 (when she was examined by Dr. Day). This is a fourteen-month period. The medical records also reflect that Plaintiff complained of hand pain prior to January 2012, and that she continued to be assessed with bilateral carpal tunnel syndrome after Dr. Day's March 2013 CE report.[49] Thus, Plaintiff's bilateral carpal tunnel syndrome met the duration requirement.

---

[47] AR p. 559.

[48] *Singletary*, 798 F.2d at 821. Whether Plaintiff's carpal tunnel syndrome meets the Fifth Circuit's *de minimus* standard for severity (discussed below) is a separate question from whether Plaintiff can establish that she suffers from an impairment that has lasted or is expected to last for a continuous period of at least twelve months. *See*, 20 C.F.R. § 416.909.

[49] *See*, AR p. 238 (July 15, 2011 emergency room treatment note wherein Plaintiff presented for the chief complaint of bilateral hand pain); AR p. 511-512 (July 16, 2014 LSU Health Baton Rouge medical record including assessment/diagnosis of carpal tunnel). The ALJ discounted the July 16, 2014 treatment note, explaining that "[t]he diagnostic assessment included carpal tunnel syndrome, hepatitis, and anxiety. However, these assessments were apparently by history as no positive clinical findings were indicated in relation to carpal tunnel syndrome, hepatitis, or anxiety." AR p. 557. With respect to the July 15, 2011 emergency room treatment note, the ALJ similarly noted that "[c]arpal tunnel syndrome was not indicated by clinical findings, diagnostic testing, or diagnostic impression." AR p. 555. Assuming *arguendo* that substantial evidence supports the ALJ's decision to discount the July 16, 2014

9

### ii. The Relevant Time Period for the Durational Requirement does not have to be after the Application

The Commissioner points out that SSI benefits are not payable for any month prior to the one in which claimant applied for benefits[50] and argues that substantial evidence supports the ALJ's finding that Plaintiff's impairment did not meet the twelve-month durational requirement because Plaintiff "points to her evidence prior to the time period at issue, when the issue of her eligibility for SSI benefits was moot due to the absence of an application for SSI benefits until December 2012."[51] It is not clear whether the ALJ took into account the time period prior to the Plaintiff's application for benefits – the ALJ discusses the January 2012 doctor's notes, as well as a note from July 2011,[52] but the ALJ also stated that the Plaintiff's impairment was not persistently severe for a period of at least twelve consecutive months "from the date of her SSI application."[53]

---

and July 15, 2011 treatment notes, the other records indicating clinical findings supporting carpal tunnel syndrome span at least a fourteen-month period.

[50] R. Doc. 17, p. 3 (citing 20 C.F.R. § 416.335).

[51] R. Doc. 17, p. 5. *See also*, R. Doc. 17, p. 5 ("while Plaintiff may have had significant CTS-related issues in January and July 2012, prior to her application for SSI benefits, Plaintiff did not seek treatment for such issues after she applied for SSI benefits, and exaggerated her CTS-related complaints during her March 2013, consultative examination with Dr. Day."); R. Doc. 17, pp. 5-6 ("Plaintiffs speculation regarding whether she might have satisfied the duration requirement for a different time period does not refute the ALJ's finding that Plaintiff did not demonstrate an impairment that satisfied the Act's duration requirement for the time period from December 2012 through September 2017.").

[52] AR p. 555.

[53] AR p. 559. This lack of clarity is an issue throughout the ALJ's September 2017 ruling. Failure to "provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." *Wiggins*, 679 F.2d at 1389. As noted above, despite what appears to be clear guidance from the Appeals Council instructing the ALJ to consider Plaintiff's RFC, the ALJ did not proceed past step two of the sequential analysis and therefore never reached the question of Plaintiff's RFC. Moreover, and as discussed below, despite stating that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms," the ALJ ultimately concluded that Plaintiff's impairments were not severe, which under Fifth Circuit precedent requires a showing that the impairment was a "slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Salmond v. Berryhill*, 892 F.2d 812, 817 (5th Cir. 2018). While the ALJ's reasoning as set out in the ruling is difficult to follow, it appears that the ALJ failed to apply the correct legal standard with respect to a determination of severity as well as with respect to the durational requirement.

Plaintiff is not required to establish that an impairment has lasted or can be expected to last for a twelve-month period starting from her application date through the ALJ's September 2017 decision. Social Security Regulations generally require an ALJ to develop the medical history of an individual seeking disability insurance benefits and/or SSI benefits for the twelve-month period prior to the month in which the application for benefits was filed.[54] While SSI payments "are prorated for the first month in which eligibility is established after application…," the Social Security Administration's Program Operations Manual ("POMS") clearly instructs ALJs to consider the time period prior to the application date when determining the duration of an alleged impairment and includes the following "REMINDER: The duration period can begin…prior to the filing date in title XVI claims."[55] While "POMS guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force," "may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions," and courts "generally defer to POMS provisions unless a court determines that they are arbitrary, capricious, or contrary to law."[56] Here, in light of the clear guidance regarding the durational requirement set forth in the internal agency manual for processing social security claims, to the extent the ALJ only considered whether Plaintiff established an impairment after her application date of December 26, 2012, the ALJ failed to apply the proper standard.

---

[54] 20 C.F.R. §§ 404.1512(d), 416.912(d).

[55] SSA-POMS: DI 25505.025(D). *See also*, SSA-POMS: DI 25501.370(A)(1) ("we do consider the period before the filing date under certain circumstances, for example when determining if a claimant met the 12-month duration requirement."); (A)(3) ("In most cases, it is not necessary to develop evidence before the filing date, unless this evidence is necessary to evaluate impairment severity or duration.").

[56] *Bettery v. Commissioner of Social Security*, Civil Action No. 14-03321, 2015 WL 4742296 at * 7, n. 9 (W.D. La. Aug. 10, 2015) (citing 1 Soc. Sec. Law & Prac. § 1:27); *Nunnery v. Social Security Administration*, Civil Action No. 16-14772, 2017 WL 4803932, at *4, n 20 (Oct. 25, 2017) ("POMS is 'a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law,' but 'it is nevertheless persuasive.'") (citing *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989)); *Ryan v. U.S. Com'r Social Sec. Admin*, 2:12-cv-00748, 2014 WL 905794, at * 9 (W.D. La. March 6, 2014) ("POMS is merely persuasive authority."). *See also*, 1 Soc. Sec. Law & Prac. § 1:28.

## B. The ALJ's Determination that Plaintiff's Carpal Tunnel Syndrome is not a Severe Impairment is Not Supported by Substantial Evidence

At step 2 of the sequential evaluation process the Commissioner must determine whether the claimant's "impairment or combination of impairments" is severe. According to the regulations, if the claimant does "not have any impairment or combination of impairments which significantly limits" his or her "physical or mental ability to do basic work activities," the Commissioner "will find" the claimant does "not have a severe impairment and [is], therefore, not disabled."[57] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.[58]

Despite the seemingly stringent language of the Regulations, in the Fifth Circuit, "[s]evere impairment has a specific – if somewhat surprising – meaning."[59] "'An impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"[60] "Re-stated, an impairment is severe if it is

---

[57] 20 C.F.R. § 416.920(c).

[58] 20 C.F.R. § 416.922(b)(1)-(6).

[59] *Salmond v. Berryhill*, 892 F.2d 812, 817 (5th Cir. 2018).

[60] *Id*. (citing *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)) (emphasis added by *Salmond* court).

anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work."[61] "This second step requires the claimant to make a *de minimis* showing."[62] This Court has noted that "'[b]ecause step two is to be rarely utilized as [a] basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow.'"[63]

"'The severity determination is based solely on medical factors.'"[64] Although certain medical records do not reflect complaints or musculoskeletal impairment related to carpal tunnel syndrome,[65] other medical records and the only medical opinion evidence in the record indicates at least the *de minimus* showing of severity required at step two was met.[66]

Here, the ALJ correctly noted that a January 9, 2012 treatment note reflected the Plaintiff was positive for manually manipulating her hands to open and close, and that she reported having difficulty holding things and opening doors.[67] An "assessment" of bilateral carpal tunnel

---

[61] *Id*.

[62] *Id*. (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)). *See also*, *Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) ("only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process.") (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) ("the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint").

[63] *Parker v. Commissioner of the Social Sec.*, Civil Action No. 12-557, 2014 WL 1239776, at * 4 (M.D. La. March 25, 2014) (quoting *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004)). *See also*, *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.") (citing *inter alia*, *Stone*, 752 F.2d at 1101).

[64] *Id*. at * 5 (citing *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007)).

[65] AR pp. 557-558 (discussing a May 30, 2013 emergency room treatment record reflecting that Plaintiff presented for treatment for a painful abscess on her right leg but did not mention carpal tunnel syndrome, April 6, 2016 treatment note reflecting Plaintiff's complaints of left ear pain and normal range of motion of physical exam, September 15, 2016 treatment note reflecting normal range of motion on physical exam and no tenderness, November 15, 2016 treatment note listing joint pain as an active problem but noting normal range of motion on physical exam, and January 16, 2017 treatment for complaints of sore throat wherein normal range of motion on physical exam was noted). *See*, AR p. 232, 537, 528, 525, 543.

[66] *See*, *Salmond*, 892 F.3d at 818-819 (reversing and remanding ALJ's determination that plaintiff did not have a severe impairment or combination of impairments where "[a]ll of the medical professionals in this record agree that [plaintiff's] symptoms would be expected to interfere with his ability to work.").

[67] AR p. 555; AR p. 184 (January 9, 2012 clinic note).

syndrome was made at that time, and Plaintiff was treated with steroid injections and referred to the orthopedic clinic.[68] On June 26, 2012, during an orthopedic appointment, Plaintiff was again "assessed" with bilateral carpal tunnel syndrome.[69] At that June 2012 encounter, Plaintiff presented with complaints of wrist and hand pain, numbness and tingling, and difficulty holding things.[70] She further reported that the January 2012 injections lasted about two months, and that she "was not interested in [surgery] yet."[71] Per the June 26, 2012 treatment note, Plaintiff's plan of care included bilateral injections, continued use of night splints, and over the counter anti-inflammatory medication.[72] On September 10, 2012, Plaintiff was prescribed naproxen for hand pain.[73]

Following her December 26, 2012 application for SSI benefits, Plaintiff was seen for a consultative examination ("CE") by Dr. Day on March 30, 2013.[74] In his Physical Disability Evaluation, Dr. Day noted that Plaintiff's complaints regarding carpal tunnel seemed "somewhat exaggerated," and that Plaintiff was able to pick up coins and make a fist.[75] However, Dr. Day also observed on physical examination that Plaintiff has decreased grip strength, decreased range of motion in her wrist, decreased muscle strength, positive Tinel's and Phalens sign,[76] and

---

[68] AR pp. 184-185.

[69] AR p. 182.

[70] AR p. 182.

[71] AR p. 182.

[72] AR p. 182.

[73] AR p. 180.

[74] AR pp. 203-206.

[75] AR pp. 204-205.

[76] Positive Phalens and Tinel's signs "constitute objective evidence and/or clinical findings of carpal tunnel syndrome." *Robinson v. Commissioner of Social Security*, 180 F.Supp.3d 497, 505 (S.D. Ohio 2016) (citing *Fletcher v. Colvin*, No. 0:12–CV–02888, 2014 WL 1252913, at *8 (D.S.C. Mar. 26, 2014) (finding that "the ALJ's statement regarding a lack of objective clinical and physical findings" with regard to carpal tunnel syndrome was not supported by substantial evidence where the record revealed positive Phalen/Tinel findings); *Piatt v. Barnhart*, 225 F.Supp.2d

neurologic changes.[77] Despite noting that Plaintiff's pain seemed somewhat exaggerated, Dr. Day diagnosed Plaintiff with, *inter alia*, bilateral carpal tunnel syndrome and opined with respect to Plaintiff's functional capabilities that she "should very occasionally do reaching, fingering, and feeling due to the Carpal Tunnel Syndrome."[78] On April 25, 2013, a state agency medical consultant, Dr. Craig, reviewed Plaintiff's medical records and Dr. Day's CE report and similarly found that Plaintiff's functional capacity for gross and fine manipulation for both hands was limited.[79] There are no contrary medical opinions in the record.[80] Accordingly, the medical opinion evidence in the record supports a finding that Plaintiff met her *de minimus* burden of establishing that her bilateral carpal tunnel syndrome is more than a "slight abnormality having such minimal effect on the individual that it would not be expected to interfere" with Plaintiff's ability to work.[81] Based on the *de minimus* showing required for Plaintiff to meet her burden of establishing that she suffers from a severe medically determinable impairment, the ALJ's step two determination regarding the severity of Plaintiff's bilateral carpal tunnel syndrome is not supported by substantial evidence.[82]

---

1278, 1285 (D. Kan. 2002) (finding error where "the ALJ's finding ignored...clinical findings...for carpal tunnel" such as "a 'positive Tinel's' and 'positive Phalen's'")).

[77] AR p. 205.

[78] AR pp. 205-206.

[79] AR p. 47 ("Gross and fine manipulation in both hands reduced to occasionally secondary to CTS.").

[80] The opinions of Dr. Day and Dr. Craig are the only medical opinion evidence in the record.

[81] *Salmond*, 892 F.3d at 817. *See also*, *Hurst v. Astrue*, Civ. No. 09-6174, 2010 WL 2553877, at * 1 (D. Or. June 21, 2010) (remanding where ALJ "should have 'continued the sequential analysis beyond step two'" because "the objective medical evidence includes diagnoses of post-concussion syndrome and head and neck pain, as well as several prescriptions for pain medication" and therefore "[t]he medical evidence thus meets the de minimus screening threshold at step two…."); *Spencer v. Colvin*, Civil No. 2:12-cv-02303, 2013 WL 6094634, at * 4 (W.D. Ark. Nov. 20, 2013) (remanding where ALJ found Plaintiff's cervical disc disease and neck pain were non-severe despite a CT scan showing disc protrusion and disc bulge and Plaintiff's indication of cervical pain during a disability physical and finding that "[s]tanding alone, these findings provide sufficient evidence demonstrating Plaintiff's neck pain satisfy the low or *de minimus* standard for establishing a severe impairment.").

[82] *See*, *Parker*, 2014 WL 1239776, at * 7 ("This is not to say that Plaintiff's impairment(s) are sufficiently disabling to award benefits. Rather, the Court acknowledges that the ALJ's 'observations' regarding claimant's credibility and the weight assigned to certain physicians' opinions 'may or may not be relevant in later steps of the sequential

## VI. Conclusion

For the reasons set forth herein, and based on the applicable standard of review under § 405(g) and the analysis which follows, the court **VACATES** the Commissioner's decision and **REMANDS** Plaintiff's case for a determination of the limiting effects of Plaintiff's severe impairment of bilateral carpal tunnel syndrome.

Signed in Baton Rouge, Louisiana, on March 27, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

analysis…but they certainly do not carry the day at step two.' Therefore, the ALJ erred in terminating his analysis at step two.") (citing *McCrea*, 370 F.3d at 362 (recognizing the evidence may not establish disability but it certainly met the threshold requirements of severity; ALJ's termination of disability inquiry at step 2 was not supported by substantial evidence). To the extent the ALJ's severity determination was based on her conclusion that "the medical evidence does not support a finding of *more than mild or minimal* functional limitation(s) related to carpal tunnel syndrome…," (AR p. 558, emphasis added) it appears that the ALJ applied the wrong legal standard. *See also*, AR p. 559 (basing non-severity determination on "lack of objective medical evidence or other evidence to support a finding of *more than mild or minimal* functional limitations….") (emphasis added); p. 555 (discussing non-severity of carpal tunnel syndrome despite finding that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms."). *Wichman v. Astrue*, 857 F.Supp.2d 618, 626 (W.D. Tex. 2012) (remanding where ALJ applied erroneous severity standard and explaining that "the specific language the ALJ used in defining the nonseverity standard has, time and again, been found to be an erroneous construction of *Stone*. The ALJ's nonseverity standard does not comport with the requirements of *Stone* in two important ways. First, the language in the ALJ's decision misconstrues the 'minimal effect' portion of the *Stone* requirement. According to *Stone*, the impairment is not severe only when it is a 'slight abnormality' with 'such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work….' In order for an impairment to be found 'not severe' under *Stone*, therefore, it cannot impose any interference on the ability to perform work activities. In contrast, the ALJ's nonseverity language allows for 'no more than a minimal effect on an individual's ability to work….' Thus, the ALJ's version permits some interference with work, while *Stone* does not allow for any interference.").

16